# Exhibit 1

May 4, 2004

Ms. Maria Gomez, Assistant Commissioner
Economic and Community Support Strategies
Minnesota Department of Human Services
444 Lafayette Road
St. Paul, Minnesota 55155


Dear Ms. Gomez:

This is in response to the State of Minnesota's March 8, 2004 request for a waiver
of the definition of eligible foods at 7 CFR 271.2 of the Food Stamp Program
regulations. The waiver would have prohibited the purchase of candy and soft
drinks that are taxed under State law with food stamp benefits.

We are denying the State's waiver request for the reasons specified in the attached
Waiver Response Outline.

We applaud the State for recognizing the importance of healthy eating by food
stamp recipients. However, we believe that supporting healthier food choices
through nutrition education and promotion is preferable to the proposed mandate.
We are committed to working with the State to develop new approaches to
improving nutrition levels of food stamp recipients.

If you have any questions or comments, please contact me or have a member of
your staff contact Tim English at (312) 353-1533 or tim.english@fns.usda.gov.

Sincerely,


Signed

OLLICE C. HOLDEN
Regional Administrator

WAIVER RESPONSE OUTLINE

1. Waiver serial number: 2040053

2. Type of request: Initial

3. Primary regulation citation: 7CFR 271.2

4. Secondary regulation citation: N/A

5. State: Minnesota

6. Region: MWRO

7. Regulatory requirements: Current regulations at 271.2 define eligible food as any food or food product intended for human consumption except alcoholic beverages, tobacco, and hot foods and hot food products prepared for immediate consumption; eligible foods are further defined as seeds and plants to grow food for the personal consumption of eligible households; and meals prepared and delivered or served to eligible food stamp recipients, as well as equipment for hunting and fishing in certain specified areas in Alaska.

8. Description of proposed alternative procedures: Minnesota proposes to amend the regulations to provide that candy and soft drinks as defined in Minnesota tax law may not be purchased with food stamp benefits. The proposal would exempt any foods that have flour as an ingredient.

9. Action and reason for approval or denial: We are denying the waiver as requested based on Section 272.3(c)(2)(i) of the regulations. This provision specifies that no waiver of the regulations may be approved if such a waiver would be inconsistent with the provisions of the Food Stamp Act. Section 3(g) of the Act defines ""food"" in a manner that is almost identical to that of the FSP regulations. By proposing to change the definition of ""food"" in the Food Stamp Program (FSP) operated in the State of Minnesota, the waiver request is in direct conflict with the statute. Therefore, any such waiver request would not qualify for approval.

Further, a demonstration project request under Section 17 of the Food Stamp Act proposing to prohibit the purchase of candy and soda as contained in this waiver request would not be considered, based on the questionable merits of the proposal,

as set forth in the following paragraphs.

Under this proposal, only certain types of candy and soft drinks, as defined by the tax law of Minnesota, would be ineligible for purchase with FSP benefits. For example, Minnesota''s request would allow the purchase of Kit-Kat and Twix candies (because they contain flour), but would prohibit the purchase of Hershey candy bars.

The proposal would also undermine the interoperability of the FSP among States. The FSP is a 100 percent Federal benefit with administrative costs shared with States. A uniform FSP allows FNS and States to implement interoperability. Allowing conflicting definitions of eligible food items would introduce obstacles to continuing interoperability and would undermine the significant benefits that interoperability provides to program recipients nationwide.

We also remain very concerned that approval of any such waiver could have negative consequences for program participants, including the reintroduction of a stigma of participation in the FSP that implementation of EBT helped to eliminate. Further, such a program change could add confusion and embarrassment at the point of sale when program recipients attempt to purchase food items once allowable but now deemed ineligible. Moreover, implementation of this waiver would perpetuate the myth that FSP participants do not make wise food purchasing decisions. A substantial body of research has shown that program participants are smart shoppers and that there is little difference in nutrient intakes between low-income participants and higher income consumers.

Also, there is some question as to how retailer compliance activities would be impacted if such a waiver were implemented. Administrative difficulties ranging from what penalties, if any, would be brought against retailers for noncompliance with the restrictions imposed by the waiver and what entity, the State or USDA, would be responsible for monitoring compliance would ensue.

We applaud the State for recognizing the importance of healthy eating by food stamp recipients. As the cornerstone of the USDA nutrition assistance programs, the FSP plays a vital role in helping to improve nutrition for low-income individuals. In Fiscal Year 2004, the State of Minnesota will receive $6,403,634 of Federal funds for the nutrition education of food stamp recipients. The proposed waiver attempts to improve the nutrition of recipients by prohibiting them from purchasing certain foods with FSP benefits. We believe that supporting healthier food choices

through nutrition education and promotion is preferable to the proposed mandate. We are committed to working with the State to develop new approaches to improving nutrition levels of food stamp recipients.

10. Regulatory or legislative basis for action. We are denying the waiver on the basis that it would be inconsistent with the provisions of the Act as specified in 7 CFR 272.3(c)(2)(i).


OLLICE C. HOLDEN
Regional Administrator
Food Stamp Program
Food & Nutrition Service
U.S. Department of Agriculture

# Exhibit 2

**USDA**

**United States
Department of
Agriculture**

**Food and
Nutrition
Service**

3101 Park
Center Drive

Alexandria, VA
22302-1500

AUG **1 9** 2011

Ms. Elizabeth R. Berlin
Executive Deputy Commissioner
New York State Office of Temporary and Disability Assistance
40 North Pearl Street, 16th Floor
Albany, New York 12243-0001

Dear Ms. Berlin:

Thank you for your request of October 6, 2010, that the Department of Agriculture (USDA) waive Supplemental Nutrition Assistance Program (SNAP) rules to permit a demonstration project restricting the purchase of sugar-sweetened beverages with SNAP benefits in New York City (NYC).

While we share in the underlying goal of the waiver to reduce obesity, several aspects of the proposal raise concerns about its potential viability and effectiveness:

* We are concerned that the scale and scope of the proposed demonstration is too large and complex. The proposal would restrict purchases of sugar-sweetened beverages for hundreds of thousands of SNAP households throughout New York City. A change of this significance should be tested on the smallest scale appropriate to minimize any unintended negative effects.

* There are a number of unresolved operational challenges and complexities, including several that could substantially impact the operations of food retailers that accept SNAP benefits. The proposal offers little evidence that the city's retailer community is well-positioned to implement the proposed restrictions. Without the active commitment and participation of all authorized retailers, the chances of operational success are limited.

* The proposal lacks a clear and practical means to determine product eligibility, which is essential to avoid retailer confusion at point-of-sale and stigma for affected clients. It also lacks a process for disseminating product information to participating retailers, a communications and coordination plan for retailer compliance activities, and clear evidence that small businesses would not be disproportionately affected by the prohibition.

* The proposed evaluation design is not adequate to provide sufficient assurance of credible, meaningful results with respect to the demonstration's effect on obesity and health. It falls short on incorporating strong measures of sugar-sweetened beverage purchases and consumption, and total calorie intake. The proposed study does not have a strong counterfactual to show what would have happened in the absence of the restriction. It also does not have the capacity to isolate the effect of the SNAP purchase restrictions from the proposed public information campaign that is intended

AN EQUAL OPPORTUNITY EMPLOYER

Ms. Elizabeth R. Berlin
Page 2

to educate SNAP participants about the consequences of consuming sugar-sweetened beverages.

While it is possible that some of these concerns could potentially be addressed through additional consultation, after carefully and extensively considering your original proposal and your response to our questions, we have decided to deny the waiver request. USDA has a longstanding tradition of supporting and promoting incentive-based solutions to the obesity epidemic, especially among SNAP recipients. In fact, USDA is currently partnering with the State of Massachusetts in implementing the Healthy Incentives Pilot, which increases SNAP benefits when fruits and vegetables are purchased. This pilot also includes a significant and rigorous evaluation component to measure success in consumer behavioral changes and health outcomes. We feel it would be imprudent to reverse policy at this time while the evaluation component of the Healthy Incentives Pilot is ongoing.

We appreciate New York's interest and unparalleled leadership in pursuing innovative approaches to promote healthful diets and healthy weight, and would like to work with you in this area to achieve the goal of reduced obesity rates more effectively and efficiently. We would like to look to potential alternative collaborations such as a private-public partnership to design, implement, and evaluate an anti-obesity intervention targeting consumption and associated behaviors while encouraging healthy choices. As part of this proposed project, USDA could evaluate the intervention's efficacy and cost-effectiveness in promoting healthy choices and reducing overweight/obesity.

I regret that we were unable to reach agreement on your waiver request. However, it is clear that no single approach will reverse the trends in overweight and obesity, and our ultimate success will depend on all of us, parents, nutrition and health care providers, government officials, and other like-minded partners. USDA stands ready to work with New York City on ways to address the problem of obesity and promote good nutrition and health for all Americans.

Sincerely,

Jessica Shahin
Associate Administrator
Supplemental Nutrition Assistance Program

# Exhibit 3

**USDA**

United States Department of Agriculture
_____

Food and Nutrition
Service

1320 Braddock Place
Alexandria, VA
22314

Stacie Gordon
Bureau Chief
Division of Community Access and Eligibility
Iowa Department of Health and Human Services

Dear Bureau Chief Gordon:

Thank you for the waiver request from the Department of Health and Human Services (DHSS) dated May 24, 2024, seeking authority to implement a statewide demonstration waiver under the Supplemental Nutrition Assistance Program (SNAP) to exclude cultivated-protein food products from SNAP eligibility. The Food and Nutrition Service is unable to approve this request.

To waive provisions of the Food and Nutrition Act (FNA), a demonstration project must be reviewed under Section 17 [7 U.S.C. 2026]. Section 17 [7 U.S.C. 2026] (b)(1)(B)(i) provides that a project may not be conducted unless:

1) the project is consistent with the goal of the Supplemental Nutrition Assistance Program of providing food assistance to raise levels of nutrition among low-income individuals; and
2) the project includes an evaluation to determine the effects of the project.

Section 17 [7 U.S.C. 2026] (b)(1)(B)(ii) of the FNA lists The Secretary may conduct a project to:

1) improve program administration;
2) increase the self-sufficiency of Supplemental Nutrition Assistance Program recipients;
3) test innovative welfare reform strategies; or
4) allow greater conformity with the rules of other programs that would be allowed but for this paragraph.

This waiver request to prohibit cultivated-protein food products in SNAP is impermissible per Section 17 [7 U.S.C. 2026] (b)(1)(B)(i), as it does not provide information on how the project would raise levels of nutrition or how the State would evaluate the effects of the project. Further, the waiver does not meet any one of the four criteria under permissible projects per Section 17 [7 U.S.C. 2026] (b)(1)(B)(ii).

USDA is an Equal Opportunity Provider, Employer and Lender

Stacie Gordon
Page 2


We appreciate Iowa's interest in SNAP and those served by this important nutrition assistance program. If you have any questions, please contact Andrea Gold, Director, Retailer Policy Division, via email at andrea.gold@usda.gov. If you have questions about cultivated proteins foods in other FNS Programs, please reach out to your Regional contact in those Program areas for more information.


Sincerely,

Cathy Buhrig
Digitally signed by Cathy Buhrig
Date: 2024.07.12
10:38:21 -04'00'

Catherine Buhrig
Associate Administrator
Supplemental Nutrition Assistance Program
USDA, Food and Nutrition Service

USDA is an Equal Opportunity Provider, Employer and Lender