**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NIEVES ARAGON, MARC CRAIG, NATHAN FLEMING, AMANDA JOHNSON, and SARAH STARKS a/k/a HUNTER STARKS<br><br>Plaintiffs,<br><br>*-against-*<br><br>BROOKE ROLLINS, in her official capacity as Secretary of Agriculture, and<br><br>UNITED STATES DEPARTMENT OF AGRICULTURE<br><br>Defendants. | Case No. 1:26-cv-00861-ABJ |

**SUPPLEMENTAL BRIEF ON 7 U.S.C. § 2026(K)**

The food-restriction waivers at issue, which Defendants claim are designed to improve the health and nutrition of SNAP participants, do not comply with 7 U.S.C. § 2026. Although Defendants approved the waivers under § 2026(b), that provision is limited to projects designed to improve program efficiency or delivery of SNAP benefits. As Plaintiffs explain more fully in their briefs, projects that test whether SNAP can better promote participants' health and nutrition do not fall within the limited scope of § 2026(b). That conclusion follows from the plain text of § 2026(b) itself. But the point is further supported by comparison to § 2026(k), which expressly authorizes health- and nutrition-related pilot projects.

**Section 2026(b)**: Section 2026(b) allows states to test "program changes that might increase the efficiency of [SNAP] and improve the delivery of [SNAP] benefits to eligible households." 7 U.S.C. § 2026(b)(1)(A). Congress intended this provision to test administrative improvements such as "simplification of the application process" and "streamlining recertification procedures." S. Rep. No. 95-418, at 125 (1977). None of the Defendants'

1

proffered rationales for the approved food restriction waivers, which speak in terms of "encourage[ing] healthy choices" (GOV003) and "improved nutritional levels" (Defs.' Reply, ECF 28, at 1), align with the express language of § 2026(b). S*ee also* Hr'g Tr. 28:3–17 (defense counsel arguing efficiency means "raise nutritional levels"); *id*. at 42:20–43:5 (court and defense counsel agreeing the goal of the waivers is to "improv[e]" recipients' "nutrition and health" and "decreas[e] obesity").

**Section 2026(k)**: Section 2026(k) confirms that when Congress intended to authorize pilot projects testing SNAP's efficacy in improving participants' health and nutrition, it did so expressly. Section 2026(k) authorizes pilot projects to test "methods of using [SNAP] to improve dietary and health status of households eligible for or participating in [SNAP]" and "to reduce overweight, obesity (including childhood obesity), and associated co-morbidities in the United States." 7 U.S.C. § 2026(k)(1)(A)–(B). Section 2026(k) contemplates projects designed to determine whether "healthier food purchases" and "healthier diets" among SNAP households result from measures such as increasing SNAP purchasing power, improving access to farmers markets, incentivizing retailers to stock healthy foods, imposing stricter retailer stocking requirements, offering point-of-purchase incentives for "fruits, vegetables, and other healthful foods," or providing integrated nutrition education programs. 7 U.S.C. § 2026(k)(3). Congress enacted § 2026(k) specifically to authorize pilot projects "to develop and test methods for improving the dietary and health status of households in SNAP, as well as to reduce obesity and other diet-related diseases in the United States." H.R. CONF. REP. 110-627, at 780, reprinted in 2008 U.S.C.C.A.N. 536, 239 (May 13, 2008).[1]

---

[1] Plaintiffs could not find additional legislative history on § 2026(k) to further illuminate the congressional intent outside of its plain language. Section 2026(k) was enacted as part of the Food, Conservation, and Energy Act of 2008, PL 110-246.

If Congress had intended § 2026(b) to authorize pilot projects testing whether SNAP can be used to improve recipients' health and nutrition, it would have said so—as it did in § 2026(k). Section 2026(b) contains none of the health- and nutrition-focused language Congress used in § 2026(k): no reference to "improv[ing] dietary and health status," "obesity," "overweight," "healthier diets," or "fruits, vegetables, or other healthful foods" appear. Instead, § 2026(b) speaks in administrative terms: "program administration," "self-sufficiency," "conformity with the rules of other programs," "efficiency," and "delivery." And while § 2026(b) requires projects to be consistent with SNAP's broad goal of providing food assistance to raise nutrition levels among low-income households, *see* 7 U.S.C. § 2026(b)(1)(B)(i)(I), that general consistency requirement does not convert § 2026(b) from a provision about program administration and efficiency into an independent authorization for health-and-nutrition experiments.

Defendants' "self-sufficiency" argument unwittingly proves the point. Defendants contend that the waivers qualify as increasing "self-sufficiency" under § 2026(b)(1)(B)(ii) because they purportedly "help recipients make nutritious decisions." Defs.' Reply, ECF No. 28, at 9; *see also* Hr'g Tr. 36:8–23 (arguing that the waivers increase self-sufficiency because the restrictions "encourage recipients" to build better nutritional "habit[s]" when shopping). But this Court should not presume that Congress hid the concept of promoting nutrition education within the word "self-sufficiency." *See* Plts.' Reply, ECF 24, at 9-10. When Congress meant to authorize pilot projects involving nutrition education, it did so expressly: § 2026(k)(3)(F) authorizes "communication and education programs" as one of several allowable health- and nutrition-focused pilots.

Defendants' reading also makes little sense in light of the starkly different evaluation and reporting requirements Congress imposed in the two provisions. Section 2026(b) requires only

3

"an evaluation to determine the effects of the project." § 2026(b)(1)(B)(ii). Section 2026(k), in contrast, requires "an independent evaluation" using "rigorous methodologies," including random assignment or other methods capable of producing scientifically valid information about which activities are effective. § 2026(k)(4)(A)(i)(I)–(II). Congress also required annual reports to the House and Senate agriculture committees for § 2026(k) projects, including evaluation results, impacts on health, nutrition, and behavioral outcomes, baseline information tied to the pilot's goals, and comparable information for control or comparison groups. § 2026(k)(4)(B). No comparable reporting obligation appears in § 2026(b). Defendants' interpretation would thus allow health- and nutrition-focused pilots to proceed under § 2026(b) with less rigorous evaluation and less congressional oversight than Congress specifically required for such pilots under § 2026(k). That implausible reading would subvert the statutory scheme.

Section 2026(b)'s default-approval mechanism further confirms that Congress did not intend that provision to authorize health- and nutrition-focused experiments of the kind at issue here. Under § 2026(b), a project is automatically approved if the Secretary does not act within the statutory deadline. 7 U.S.C. § 2026(b)(1)(D)(ii). Section 2026(k), by contrast, contains no similar default-approval rule. Defendants cited this default-approval feature at oral argument to contend that § 2026(b) grants broad discretion to states, arguing that "without much ado" such requests would be approved. Hr'g Tr. 34:14–35:7. This argument, however, cuts against the Defendants: it confirms that § 2026(b) was designed for low-stakes administrative adjustments— not for large-scale changes restricting access to statutorily eligible food for 100% of a state's SNAP caseload. *Cf. id.* at 45:9–19 (court noting that West Virginia alone projected its waiver would affect all 273,981 individual SNAP recipients in the state). Given the fundamental importance of the statutory definition of "food" (7 U.S.C. 2012(k)) to the Food and Nutrition

4

Act, Congress did not intend to permit projects with potentially significant adverse consequences for SNAP participants—including projects restricting their access to statutorily eligible foods—to take effect automatically through agency inaction. That structure confirms that § 2026(b) was not designed for pilot projects aimed at changing participants' health and nutrition by restricting the foods they may purchase.

Nor can the waivers be sustained under § 2026(k). Although health- and nutrition-related pilot projects must proceed, if at all, under that provision, the food-restriction waivers do not meet its requirements. Section 2026(k) does not authorize the Secretary to waive SNAP requirements, much less to alter the statutory definition of "food." And § 2026(k) expressly prohibits the use of funds for "any project that limits the use of benefits under this chapter." § 2026(k)(2)(D). The waivers also fail § 2026(k)'s evaluation requirements. Because they do not satisfy § 2026(b)'s evaluation requirement, they necessarily fall short of § 2026(k)'s stricter requirement of an independent evaluation using rigorous methodologies.

Defendants, tellingly, have not asserted that the waivers can be justified as pilot projects under § 2026(k).  This was confirmed at oral argument, where Defendants stated § 2026(b) was "the only authority that the agency has asserted in these approvals"—and expressly declined to take any position on § 2026(k) absent further briefing. Hr'g Tr. 31:23–32:2.

Date: May 8, 2025
New York, New York

Respectfully submitted,

  /s/ *Ciara Malone*
Ciara Wren Malone (*pro hac vice*)
Katharine Deabler-Meadows (*pro hac vice*)
National Center for Law and
Economic Justice
50 Broadway, Suite 1500
New York, NY 10004
(212) 633-6967
malone@nclej.org
deabler@nclej.org

Meegan F. Hollywood (NY0206)
Jeffery I. Shinder (*pro hac vice*)
Ellison A. Snider (*pro hac vice*)
Shinder Cantor Lerner LLP
14 Pennsylvania Plaza, 19th Floor
New York, NY 10122
(646) 960-8601
meegan@scl-llp.com
jeffrey@scl-llp.com
esnider@scl-llp.com

Lindsay R. Maher (*pro hac vice*)
Shinder Cantor Lerner LLP
600 14th St. NW, 5th Floor
Washington, D.C. 20005
lmaher@scl-llp.com