**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NIEVES ARAGON *et al.*,<br><br>   *Plaintiffs*,<br><br>  *v.*<br><br>BROOKE ROLLINS, in her official capacity as Secretary of Agriculture; *et al.*,<br><br>   *Defendants*. | No. 1:26-cv-00861-ABJ |

**DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

On May 1, 2026, the Court heard argument on the parties' cross-motions for summary judgment. Among the many issues raised and discussed was the significance of 7 U.S.C. § 2026(k), a provision that Plaintiffs suggested—for the first time, from the podium—Defendants wrongfully failed to invoke in their approval of the challenged actions in this case. Accordingly, the Court permitted the parties to submit short supplemental briefs on the impact, if any, of § 2026(k) on the analysis in this case.

The answer, in short, is that § 2026(k) has no impact on whether Defendants lawfully exercised independent authority under § 2026(b) to authorize the challenged waivers. Section 2026(k) mandates the use of pilot projects that can support dietary health and nutritional goals in six specific circumstances. Section 2026(b), by contrast, is based on permissive authority to conduct a much broader range of projects. The projects challenged in this case are not among those contemplated in § 2026(k), and the fact that § 2026(k) authorizes certain projects does not limit the broad authority provided in § 2026(b) to conduct materially different types of projects. Accordingly, § 2026(k) is of no bearing on this case, and for the reasons described in Defendants' principal briefs, the Court should enter judgment in Defendants' favor.

**BACKGROUND**

When Congress enacted the SNAP program, its express goal was "to safeguard the health and well-being of the Nation's population by raising the level of nutrition among low-income households." 7 U.S.C. § 2011. Congress endeavored to meet that goal by setting certain bottom-line conditions for the program's operations. *See id.* §§ 2012–20. But Congress also understood that as the program was implemented, its federal and state administrators would be best situated to try improving on Congress's effort to meet SNAP's policy ideals. To that end, SNAP's

authorizing statute includes a broad authority to try something new, in various parts of the country, to test whether the program can be brought into closer alignment with its goals. *See id.* § 2026.

The most expansive grant of that authority is found at § 2026(b). That provision begins by authorizing the Secretary to "conduct … pilot or experimental projects designed to test program changes that might increase the efficiency of" SNAP. § 2026(b)(1)(A). To conduct those projects, the Secretary "may waive any requirement of" the SNAP program "to the extent necessary for the project to be conducted." *Id.* And the provision sets a deliberately low barrier to that broad waiver authority: the project must merely be "consistent with the goal … of providing food assistance to raise levels of nutrition among low-income individuals," and must "include[] an evaluation to determine the effects" thereof. § 2026(b)(1)(B)(i). The provision also outlines four broad purposes for such projects: "improv[ing] program administration," "increase[ing] the self-sufficiency of [SNAP] recipients," "test[ing] innovative welfare reform strategies," or "allowing greater conformity with the rules of other programs." § 2026(b)(1)(B)(ii).

Every part of that provision shares the same basic characteristic: the expansive nature of USDA's authority to conduct pilot projects. Congress was determined to ensure that if there were improvements to be made to a program dedicated to feeding the hungry, those improvements be identified and tested without delay. Congress was so determined to encourage such efforts, in fact, that it gave the Secretary no longer than 60 days to respond to a request that she exercise her waiver authority under § 2026(b)(1)(A). And if the Secretary fails to respond within that time, the waiver is *automatically* approved unless "specifically prohibited" by another provision. § 2026(b)(1)(D). The Secretary's waiver authority, in other words, can be exercised even without her involvement.

Alongside the broad authority provided in § 2026(b), Congress also specifically authorized certain pilot projects with more targeted aims. As relevant here, § 2026(k) *requires* that the

2

Secretary "*shall* carry out … pilot projects to develop and test methods … to improve the dietary and health status of [eligible] households … and [] to reduce … obesity … in the United States." § 2026(k)(1) (emphasis added).  But it limits that requirement to six kinds of projects.  The first kind would "increase the … purchasing power of the participating households by providing increased … benefit allotments."  § 2026(k)(3)(A).  The second would "increase access to farmers [*sic*] markets" for SNAP participants.  § 2026(k)(3)(B).  The third would "provide incentives to authorized … retailers to increase the availability of healthy foods."  § 2026(k)(3)(C).  The fourth would "subject authorized … retailers to stricter … requirements with respect to carrying … healthful foods."  § 2026(k)(3)(D).  The fifth would "provide incentives at the point of purchase to encourage [participating] households … to purchase … healthful foods."  § 2026(k)(3)(E).  And the sixth would "provide to participating households integrated communication and education programs."  § 2026(k)(3)(F).

### ARGUMENT

Simply put, this is a § 2026(b) case.  None of the challenged waivers purported to be premised on authorities furnished in § 2026(k).  To the contrary, each waiver approval expressly cited § 2026(b) as the source of operative authority.  *See* GOV000016 (Colorado), GOV000032 (Iowa), GOV000055 (Nebraska), GOV000070 (Tennessee), GOV000093 (West Virginia).  And for good reason: the challenged waivers would not satisfy any of the types of projects, *see* § 2026(k)(3), that the Secretary "shall carry out," § 2026(k)(1).  The actions Plaintiffs challenge exercise exactly one kind of authority: to waive the definition of "food," § 2012(k), to ensure—in a modest but important alteration—that SNAP benefits, when spent on "food," not be spent on nutritionally deleterious items at odds with the goals of the SNAP program.  That alteration of the statutory definition does not increase beneficiary allotments, increase access to farmers' markets,

3

incentivize or restrict retailers, constitute a point-of-purchase incentive, or provide communication or education programming.  *See* § 2026(k)(3).  Accordingly, § 2026(k) simply could not serve as the standard against which the waivers challenged in this case should be measured.

The inapplicability of § 2026(k), however, does not prevent Defendants from exercising other lawful authority—including that in § 2026(b)—to achieve similar ends.  After all, nothing in § 2026(k) *precludes* Defendants' exercise of other lawful authority simply because that separate authority could likewise improve the well-being of SNAP recipients. To the contrary, Congress expressly imbued the Secretary with broad authority at the outset of the pilot-project statutory scheme, § 2026(b), before describing in greater detail the parameters it desired for more specific kinds of projects such as those described at § 2026(k)(3).  There is simply nothing in the overall scheme to suggest that a conceivable project *not* among the specifically enumerated kinds cannot be conducted pursuant to the broader grant of authority.  Again, Congress went so far as to make approval of such non-enumerated projects *automatic* so long as they ran afoul of no *explicit* prohibition in the statute. § 2026(b)(1)(D).  In the face of such clear congressional encouragement, this Court ought not impose an *implicit*, extra-textual limitation based on mere negative inferences derived from the existence of a separate, more specific authority in § 2026(k).  Nor does the *expressio unius* canon suggest otherwise: that canon is inapplicable where, as here, the statutory context reflects Congress's broad grant of discretionary authority *in addition to* those specific types of projects encouraged in § 2026(k)(3).  *See* A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 107 (2012) (canon "must be applied with great caution, since its application depends so much on context"); *NLRB v. SW General, Inc.*, 580 U.S. 288, 302 (2017) ("The *expressio unius* canon applies only when circumstances support a sensible inference that the term left out must have been meant to be excluded" (quotation cleaned)).

4

Finally, the nature of congressional direction throughout the statute further explains why the programs authorized at § 2026(k)(3) do not implicitly prohibit the Secretary from trying to improve the nutrition of SNAP beneficiaries using different means under § 2026(b). Section 2026(k) employs mandatory language—"[t]he Secretary *shall* carry out … pilot projects," § 2026(k)(1) (emphasis added)—but then limits that requirement to six kids of enumerated programs, § 2026(k)(3), none of which are at issue in this case. In other words, it is best understood as a congressional solicitation or encouragement of specific projects. Section 2026(b), by contrast, employes permissive language—"[t]he Secretary *may* conduct … pilot or experimental projects," § 2026(b)(1)(A) (emphasis added)—and then pairs that permissive authority with a correspondingly broader reach, including for such expansive purposes as "test[ing] innovative welfare reform strategies," § 2026(b)(1)(B)(ii)(III). That distinction evinces a clear congressional effort to more forcefully encourage certain kinds of projects, such as those enumerated at § 2026(k)(3), while nevertheless permitting the Secretary to pursue a broader range of projects at her discretion. And that scheme makes perfect sense: it ensures a special attention to certain congressional priorities in § 2026(k)(3), while simultaneously broadly permitting the Secretary to use her position as custodian of the SNAP program to improve on that program in ways she sees fit. The fact that the challenged waivers are not among the pilot projects associated with the mandatory language at § 2026(k)(1) has no bearing whatsoever on the Secretary's exercise of permissive authority to engage in a different kind of project altogether.

## CONCLUSION

For the foregoing reasons, and for those set out in Defendants' principal briefs, the Court should enter summary judgment in favor of Defendants.

MAY 8, 2026                          *Respectfully submitted,*

                                     BRETT A. SHUMATE
                                     Assistant Attorney General
                                     Civil Division

                                     JOSEPH E. BORSON
                                     Assistant Branch Director
                                     Federal Programs Branch

                                     */s/ Cesar Azrak*
                                     CESAR AZRAK
                                     EITAN SIRKOVICH
                                     Trial Attorneys
                                     United States Department of Justice
                                     Civil Division, Federal Programs Branch
                                     1100 L Street, NW
                                     Washington, DC 20005
                                     Telephone: (202) 538-3491
                                     cesar.e.azrak@usdoj.gov

                                     *Counsel for Defendants*